**STEPHEN T. HOLZER, SBN 074561**
**LEWITT, HACKMAN, SHAPIRO, MARSHALL & HARLAN**
16633 Ventura Boulevard, 11th Floor
Encino, California 91436-1865
Telephone: (818) 990-2120
Telecopier: (818) 981-4764
sholzer@lewitthackman.com

Attorneys for **Plaintiff 1932 Hillhurst, LLC**

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 1932 HILLHURST, LLC,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>KUI SUN KIM; 2006 KIM FAMILY TRUST; MARY S.L. WONG; THE WONG FAMILY TRUST; MARY S.L. WONG, AS TRUSTEE OF THE WONG FAMILY TRUST DATED FEBRUARY 13, 2003; CEDARS-SINAI MEDICAL CENTER, a California nonprofit public benefit corporation; and DOES 1-20, inclusive,<br><br>　　　　Defendants. | CASE NO:<br><br>**COMPLAINT**<br><br>1. **FOR LIABILITY UNDER CERCLA (42 U.S.C. A. §§ 9601 et seq.);**<br><br>2. **FOR PRIVATE NUISANCE (California Civil Code § 3479);**<br><br>3. **FOR NEGLIGENCE AND NUISANCE PER SE (California Health & Safety Code Section 25189.5, et seq.);**<br><br>4. **FOR RECOVERY UNDER HSAA (California Health & Safety Code § 25300 et seq.); and**<br><br>5. **FOR DECLARATORY RELIEF (28 U.S.C.A. § § 2201, 2202**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff alleges as follows:

/ / /

/ / /

/ / /

/ / /

/ / /

# INTRODUCTION

1. This action arises under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C.A. §§ 9601 et seq., as amended, and the Hazardous Substance Account Act, California Health & Safety Code §§ 25300 et seq. and common law.

2. This is a civil action commenced for recovery of past, present and future response costs and for damages from the named Defendants incurred or to be incurred by Plaintiff in responding to the disposal and releases or threat of releases of hazardous substances on, at or under the property located at 1932 Hillhurst Avenue, Glendale, California ("Plaintiff's Property"), which substances originated at and from the property next door located at 1922 Hillhurst Avenue, Glendale, California Street, City of Los Angeles, County of Los Angeles, State of California (the "1922 Property").

3. This Court has federal question subject matter jurisdiction over this case pursuant to CERCLA, 42 U.S.C.A. §§ 9601 et seq.  Further, all of Plaintiff's claims for relief contained in this complaint arise form a common nucleus of operative facts and are thus part of the same case or controversy.  Therefore, this Court has both subject matter and pendant, or supplemental, jurisdiction over the State-law claims against Defendants. 28 U.S.C.A. § 1367.

4. Plaintiff also seeks a declaration of Defendants' liability for all unreimbursed present and future response costs to be incurred by plaintiff in connection with the Site and groundwater contamination. 28 U.S.C.A. §§ 2201, 2202.

5. Venue is proper in this district pursuant to CERCLA, and 28 U.S.C.A. § 1391(b) (1) and (2) and (c) (1) and (2), because the releases or threatened releases of hazardous substances that give rise to Plaintiff's claims have occurred in this district; the individual Defendants reside and are domiciled here; and the Defendants are subject to this Court's personal jurisdiction.

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

**NOTICE**

6. Plaintiff has provided a copy of this complaint to the Attorney General of the United States and to the Administrator of the Environmental Protection Agency and to the Director of the California Department of Toxics Substances Control.

**PARTIES**

7. Plaintiff 1932 HILLURST, LLC, is a California limited liability company organized under the laws of California, with its principal place of business in Los Angeles County, California. Plaintiff Is the present owner/operator of Plaintiff's Property.

8. Defendant KUI SUN KIM is an individual.

9. Defendant the 2006 KIM FAMILY TRUST is a California Trust.

10. Defendant MARY S.L. WONG is an individual;

11. Defendant THE WONG FAMILY TRUST is a California Trust;

12. Defendants ALBERT M.F. WONG AND MARY S.L. WONG, AS CO-TRUSTEES OF THE WONG FAMILY TRUST DATED FEBRUARY 13, 2003, are or were individuals who are or were Co-Trustees of said Trust.

13. Defendant CEDARS-SINAI MEDICAL CENTER ("CEDARS SINAI") is a California nonprofit public benefit corporation. This Defendant acquired the 1922 Property in 2017.

14. Plaintiff does not yet know the true names and capacities of Defendants named as DOES 1 through 20, inclusive, and they are therefore sued by fictitious names. Plaintiffs will amend this pleading to state their true names and capacities after they are ascertained. (State law pendant claims only).

15. The Defendants named in Paragraphs 8-13 and 14 above and Defendants Does 1-20, inclusive, shall be referred to as the "prior owner/operator Defendants."

/ / /

# FIRST CAUSE OF ACTION
## AGAINST THE PRIOR OWNER/OPERATOR DEFENDANTS
## FOR COST RECOVERY UNDER CERCLA § 107(A)

16. The above allegations are incorporated herein.

17. For decades, the 1922 Property was home to a dry cleaners known as the Los Feliz Cleaners (the "cleaners"). The cleaners existed in business on that property from at least 1980 to 2017. Plaintiff is informed and believes, and based thereon alleges, that the cleaners used the chemical known as PCE aka tetrachloroethylene as a cleaning agent for customers' clothes. TCE aka trichloroethylene is known as a breakdown product from PCE.

18. Prior to Defendant CEDARS-SINAI acquiring the 1922 property, the property and/or the cleaners thereon were owned and/or operated the prior owner/operator Defendants

19. The harm from exposure to PCE is well known:

> **Tetrachloroethylene is widely used for dry-cleaning fabrics and metal degreasing operations. Effects resulting from acute (short term) high-level inhalation exposure of humans to tetrachloroethylene include irritation of the upper respiratory tract and eyes, kidney dysfunction, and neurological effects such as reversible mood and behavioral changes, impairment of coordination, dizziness, headache, sleepiness, and un-consciousness. The primary effects from chronic (long term) inhalation exposure are neurological, including impaired cognitive and motor neurobehavioral performance. Tetra-chloroethylene exposure may also cause adverse effects in the kidney, liver, immune system and hematologic system, and on development and reproduction. Studies of people exposed in the workplace have found associations with several types of cancer including bladder cancer, non-Hodgkin lymphoma, multiple myeloma. EPA has classified tetrachloroethylene as likely to be carcinogenic to humans.**
> Source: https://www.epa.gov/sites/default/files/2016-09/documents/tetrachloroethylene.pdf

20. The harm from exposure to TCE is also well known:

> **The risk assessment showed risks from inhalation of TCE to consumers and workers, including bystanders from use as an aerosol degreaser and as a spot cleaner. It also**

> showed risks to workers and bystanders from use as a vapor degreaser. Short-term and long-term exposures can potentially affect the developing fetus. High acute concentrations of TCE vapors can irritate the respiratory system and skin and induce central nervous system effects such as light-headedness, drowsiness, and headaches. Repeated (chronic) or prolonged exposure to TCE has been associated with effects in the liver, kidneys, immune system, central nervous system. EPA has concerns for effects in the developing fetus from both acute and chronic exposure. TCE is carcinogenic to people through all routes of exposure, which include inhalation, dermal (skin), and ingestion.
> Source: https://www.epa.gov/assessing-and-managing-chemicals-under-tsca/fact-sheet-trichlorothylene-tce#q3

21. Plaintiff is informed and believes, and based on such information and belief alleges, that PCE and TCE were disposed of at, and released from, the cleaners and contaminated the 1922 Property during the time that the prior owner/operator Defendants were owners and/or operators of the cleansers and/or the 1922 Property. Plaintiff is further informed and believes, and based on such information and belief alleges, that such PCE and TCE migrated in the form of soil vapors and possibly other forms onto and under Plaintiff's Property.

22. Plaintiff is informed and believes and on the basis of such information and belief alleges that the prior owner/operator Defendants, and each of them, transported and/or arranged for the transport of PCE to the 1922 Property, and stored, treated, and disposed of PCE onto the Property and otherwise owned and/or operated the property during the time that PCE was disposed of at the property.

23. Both the 1922 Property and Plaintiff's Property constitute a facility, as that term is defined in CERCLA, 42 U.S.C.A. § 9601(9).

24. A release or threatened release of a hazardous substance, as those terms are defined in CERCLA, at 42 U.S.C.A. § 9601(22), (14), has occurred at the 1922 Property and Plaintiff's Property.

25. In or about May 2020, at the request of Plaintiff's lender, Fulcrum Resources Environmental performed a Soil Vapor Investigation at Plaintiff's Property and reported that the investigation encountered PCE at elevated

concentrations. Prior to receiving this report, Plaintiff did not know, and had no reason to know, of such contamination.

26. In 2022, at Plaintiff's request, Partner Engineering and Science, Inc. took additional soil vapor samples at Plaintiff's Property, which again confirmed there were elevated PCE and TCE concentrations.

27. Plaintiff did not cause or contribute to the environmental contamination at, on and/or under either the 1922 Property or Plaintiff's Property and denies that Plaintiff is liable for costs incurred as the result of the alleged release or threatened release of hazardous substances at these properties. However, in the interest of an expeditious cleanup and acting in good faith, plaintiff undertook or had taken on its behalf removal action including, but not limited to, the response actions listed above. Plaintiff has already incurred costs according to proof, in the course of taking these actions and will incur future costs, according to proof, in taking these actions. These actions and the costs incurred in taking them are, and will be, consistent with the National Contingency Plan.

28. The prior owner/operator Defendants are now thereby jointly and severally liable under § 107(a) of CERCLA, 42 U.S.C.A. § 9607(a), in particular 42 U.S.C.S. § 9607(a)(4)(B).

## SECOND CAUSE OF ACTION

### (For Private Nuisance against All Defendants)

29. The above allegations are incorporated herein.

30. California Civil Code § 3479 provides:

> **Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance.**

31. The PCE and TCE contamination described above constitutes a

nuisance because the contamination is both injurious to health and interferes with Plaintiff's comfortable enjoyment of Plaintiff's Property.

32. The prior owner/operator Defendants had a legal duty to use due care to ensure that the disposals and releases of contamination said Defendants caused would not harm other property owner/operators and/or their occupants; beached that duty by disposing, uncontrolled, into the environment chemicals containing PCE; by so breaching that duty caused PCE and TCE contamination to spread to Plaintiff's Property; and thus caused damages to Plaintiff.

33. The prior owner/operator Defendants owned and/or operated on the 1922 Property and originally caused the contamination there. As the prior owner/operator Defendants did not engage in any response action to prevent migration and/or further migration to Plaintiff's Property; did not engage in any response action at, on and/or under Plaintiff's Property, whether removal or remedial action; and did not even notify Plaintiff that it was likely contamination had migrated to Plaintiff's Property.

34. CEDARS-SINAI purchased the 1922 Property in 2017. In connection with the purchase, CEDARS-SINAI knew, or had reason to know, that the property was contaminated. Further, Plaintiff is informed and believes, and based thereupon alleges, that CEDARS-SINAI knew, or had reason to know, that contamination from the 1922 property had migrated next door to Plaintiff's Property.

35. Despite this knowledge, CEDARS-SINAI did not engage in any response action to prevent further migration of contamination to Plaintiff's Property; did not engage in any response action at, on and/or under Plaintiff's Property, whether removal or remedial action; and did not even notify Plaintiff that it was likely contamination had migrated to Plaintiff's Property.

36. CEDARS SINAI was negligent. This Defendant had a Phase II performed on the 1922 Property regarding the dry-cleaner related contamination; but the Phase II was limited to assessing whether dry-cleaning operations have impacted

the subsurface soils at that property with volatile organize compounds. The Phase II failed to investigate the lateral extent of contamination from the PCE and TCE on and from the property and failed to investigate whether PCE and/or TCE contamination from the dry-cleaner operations contaminated *off-site* neighboring properties. The Phase II also failed to investigate whether groundwater was contaminated and failed to investigate whether such contamination, if it exists, is among other things a source of soil-vapor contamination. Thus, CEDARS SINAI negligently failed to authorize, direct and supervise a proper Phase II concerning the risks to human health and the environment from the cleaners' historical operations at the 1922 Property and negligently filed to abate that contamination.

37. CEDARS-SINAI had a legal duty to use due care to ensure that the disposals and releases of contamination said Defendant's predecessors-in-interest caused would not harm other property owner/operators and/or their occupants; beached that duty by failing to investigate this issue; and by so breaching that duty has thus caused damage to Plaintiff.

38. CEDARS-SINAI was thus negligent within the meaning of Civil Code § 3483, which provides: " Every successive owner/operator of property who neglects to abate a continuing nuisance upon, or in the use of, such property, created by a former owner/operator, is liable therefor in the same manner as the one who first created it."

39. Except where the identity and/or location of any Defendant could not be ascertained, Defendants have been notified by Plaintiff of the existence of the hazardous substances and contamination at Plaintiff's Property and of the conditions of pollution and nuisance created and/or not responded to by CEDARS SINAI and/or the prior owner/operator Defendants. Demand has been made by Plaintiff on CEDARS-SINAI and on the prior owner/operator Defendants whose contact information could be obtained, and who are not deceased, to assess, investigate, remove and remediate all such hazardous substances and contamination from

Plaintiff's Property, but to date CEDARS-SINAI and the prior owner/operator Defendants have failed and refused to do so. As for the prior owner/operator Defendants who have been identified, they have not responded to Plaintiff's demand.

40. As a result of the existence of hazardous substances and wastes and other contamination on Plaintiff's Property, a condition of pollution and nuisance exists on the said Property, and this condition of pollution and nuisance has created and continues to create a threat to the health and safety of occupants, the public and the environment.

41. The existence of hazardous substances and contamination and other waste materials in the soil, the ground and potentially the groundwater at Plaintiff's Property has resulted in a condition which is injurious to the health and offensive to the senses, and which is an obstruction to the free use of Plaintiff's Property and is an interference with Plaintiff's comfortable use and enjoyment.

42. As a result of the actions, inactions and omissions of CEDARS SINAI and the prior owner/operator Defendants, and of each of them, a continuing and/or permanent nuisance exists and continues to exist resulting in damage to the Plaintiff on a daily basis, with each release and/or threatened release of hazardous substances and each migration of the same, from the surface into the air, soil and into the ground and/or groundwater, giving rise daily to a new cause of action. Alternatively, to the extent the injuries and damages cannot be abated, the nuisance is permanent with permanent damages and injuries to Plaintiff.

43. The condition of pollution and nuisance is specifically injurious to Plaintiff in light of Plaintiff's owner/operator interest in the Plaintiff's Property.

44. As a result of the action, inactions and omissions of Defendants, and of each of them, Plaintiff has suffered and will continue to suffer general, compensatory and consequential damages in excess of $25,000, inclusive of but not limited to any and all amounts incurred and to be incurred for the investigation, assessment, monitoring, treatment, removal and/or remediation of hazardous substances,

contamination and wastes on Plaintiff's Property, the diminution in value of Plaintiff's Property, and the loss of use and/or loss of rent from the use of some or all portions of Plaintiff's Property, all in amounts not yet fully ascertained, but which will be more specifically shown in accordance with proof at the time of trial.

45. Plaintiff has requested and continues to seek to have Defendants abate and stop the nuisance, but they have so far failed and refused to do the same and the nuisance continues to exist. The failure timely to mitigate, through assessment, investigation, monitoring, treatment, removal and remediation, the hazardous substances, waste and contamination at Plaintiff's Property, will further increase the damages and injuries Plaintiff has and will continue to suffer and incur.

46. In the event that this situation is deemed to be a continuing nuisance, Plaintiff prays that a mandatory and/or prohibitory injunction be issued, requiring Defendants, and each of them, to enjoin and abate said nuisance and/or to perform any and all actions necessary to assess, investigate, remove, remediate, monitor, treat, and/or clean up the hazardous substances, wastes and contamination from Plaintiff's Property or to pay for Plaintiff to accomplish these things.

47. In the event that this situation is deemed to be a permanent nuisance, Plaintiff prays that it be awarded the amount of the diminution in value of Plaintiff's Property as a result of the contamination for which Defendants, and each of them, are responsible.

### THIRD CAUSE OF ACTION
### (For Negligence and Nuisance Per Se
### Against Prior Owner/Operator Defendants)

48. The above allegations are incorporated herein.

49. The hazardous substances, wastes and contamination in the soil, the ground and potentially the groundwater on, at and/or under Plaintiff's Property were released in whole or in part as a result of the negligence and careless actions, inactions, and omissions and the reckless conduct of the prior owner/operator

Defendants, and of each of them, in their generation and disposal and/or allowing for the generation, disposal or release of hazardous substances, wastes and other contaminants on and from the 1922 property, all of which activity released hazardous substances, wastes and other contaminates to and at Plaintiff's Property.

50. The prior owner/operator Defendants' actions and/or inactions as aforesaid constitute violations of applicable environmental laws including, but not limited to, California Health & Safety Code Section 25189.5, et seq. and provisions and/or regulations related thereto. These actions and inactions of the prior owner/operator Defendants, and each of them, are and were negligent and/or negligent per se as well as constituting a nuisance per se.

51. As a result of the negligent and reckless actions, inactions, and/or omissions of the prior owner/operator Defendants, and of each of them, Plaintiff has suffered and will continue to suffer general, compensatory and consequential damages in excess of $25,000, including but not limited to amounts incurred or to be incurred by Plaintiffs for the assessment, monitoring, investigation, removal and/or remediation of hazardous substances, wastes and contamination in the air, soil, ground and potentially groundwater at Plaintiff's Property, the diminution in value of Plaintiff's Property, and the loss of use and/or loss of rent from use of some or all portions of Plaintiff's Property, and other amounts yet to be determined, all of which have not yet been fully ascertained but which will be more specifically shown in accordance with proof at the time of trial.

**FOURTH CAUSE OF ACTION**

**(For Indemnity and Contribution Under California's**

**Hazardous Substance Account Act**

**Against Prior Owner/Operator Defendants)**

52. The above allegations are incorporated herein.

53. The Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code § 25300 et seq. ("HSAA"), was enacted to

encourage the expedient cleanup of "hazardous substances" that have been released into the environment. In furthering this goal, the California Legislature included the statutory right of indemnity and contribution for those parties who clean up contaminated properties from those parties who are responsible for the contamination.

54. Health & Safety Code § 25363(d) provides that "a person who has incurred response or corrective action costs in accordance with this chapter, Chapter 6.5 (commencing with Section 25100), or the federal act [referring to CERCLA] may seek contribution or indemnity from any person who is liable pursuant to this chapter."

55. A "liable person" is defined in section 25323.5(a)(1) of HSAA as "those persons described in section 107(a) of [CERCLA] (42 U.S.C. Sec. 9607(a))."

56. "Those persons described in section 107(a)" of CERCLA include the owner/operator and operator of a facility, any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed, and any person who arranged for disposal or treatment of hazardous substances for transport to a disposal facility. 42 U.S.C. § 9607(a).

57. Each prior owner/operator Defendant is a "person" within the meaning of section 25319 of the Health & Safety Code.

58. Each prior owner/operator Defendant is a "liable person" within the meaning of section 25323.5(a)(1) of the Health & Safety Code and 42 U.S.C. § 9607(a).

59. As a direct and proximate result of the prior owner/operator Defendants' actions that caused or contributed to releases of hazardous substances at, on and/or under Plaintiff's Property, Plaintiff has incurred and will continue to incur costs for removal or remedial actions taken in accordance with Chapter 6.5 commencing with Health & Safety Code § 25100 and/or CERCLA. These include, but are not limited to, costs so far incurred for investigation, testing and site

assessment and costs to be incurred for monitoring and remediation of the contamination.

60. Plaintiff gave the Department of Toxic Substances Control ("DTSC") notice of the commencement of this action, as required by section 25365 (d) of the Health & Safety Code.

61. Accordingly, under strict liability imposed by the HSAA, Plaintiff is entitled to indemnity and contribution from the prior owner/operator Defendants, and from each of them, for the past and future costs of such removal and/or remedial action, including any work or activities related to such removal and/or remedial action such as investigation, mitigation, or cleanup and abatement work at the Site.

## FIFTH CAUSE OF ACTION
### (For Declaratory Relief Against All Defendants)

62. The above allegations are incorporated herein.

63. An actual controversy exists between the Plaintiffs and the Defendants, and each of them, in that Plaintiff contends and Defendants and each of them deny that if Plaintiffs' allegations with respect to damages and injury are true, then Defendants, and each of them, have responsibility for such costs and damages that have been or will be incurred, for activities performed and/or to be performed in the repair, investigation, assessment, monitoring, treatment, removal, remediation and cleanup of any hazardous substances, wastes or contamination on Plaintiff's Property, for the diminution in the market value of Plaintiff's Property and the loss of use of such property, and for such other damages in amounts that Plaintiffs will continue to incur.

64. Plaintiff request that a judicial determination and declaration be issued setting forth the parties' rights and obligations as necessary and appropriate in order to avoid a multiplicity of actions and in order for the respective parties herein to ascertain their rights and duties with respect to the Plaintiff's claims herein, and each of them. 28 U.S.C.A. §§ 2201, 2202.

**WHEREFORE,** Plaintiff prays for judgment against Defendants, and against each of them, as follows:

1.  As to the prior owner/operator Defendants, under CERCLA and the Health & Safety Code, for the recovery of all response costs incurred or to be incurred by Plaintiff in connection with the release or threatened release of hazardous substances, wastes and contamination at, on and/or under Plaintiff's Property;

2.  As to all Defendants, under State law, for general, compensatory and consequential damages in excess of $25,000, inclusive of but not limited to any and all amounts incurred or to be incurred from the investigation, assessment, monitoring, removal and/or remediation of hazardous substances, contamination and wastes at, on, and/or under Plaintiff's Property, the diminution in value of such property, and the loss of use and/or loss of rent from use of some or all portions of Plaintiff's Property, and other amounts yet to be determined, all of which have not yet been fully ascertained but which will be more specifically shown in accordance with proof at the time of trial;

3.  As to all Defendants, for reimbursement of costs, restitution and a mandatory and/or prohibitory injunction requiring the Defendants to enjoin and abate the hazardous substances, wastes and contamination existing in air, soil, ground and/or groundwater at, on, and/or under Plaintiff's Property and to perform any and all necessary repair, investigatory, assessment, monitoring, removal, remediation, treatment or cleanup or other similar work on and at Plaintiff's Property, in or around the vicinity of property and within the groundwater beneath Plaintiff's Property;

4.  For a judicial determination and declaration setting forth the parties' rights, obligations and duties required by law;

5. For attorney's fees to the extent permitted by law;

6. For a jury trial on all matters triable to a jury; and

7. For such other and further relief as this Court deems just and proper.

**Date:** September 7, 2022

**LEWITT, HACKMAN, SHAPIRO, MARSHALL & HARLAN**

By:   /s/ Stephen Holzer
**Stephen T. Holzer**
Attorneys for Plaintiff
**1932 Hillhurst, LLC**

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**DATED:** September 7, 2022

**LEWITT, HACKMAN, SHAPIRO, MARSHALL & HARLAN**

By: /s/ Stephen Holzer
**STEPHEN T. HOLZER**
Attorneys for Plaintiff
**1932 Hillhurst, LLC**